IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEFFERSON O. SMITH,

       Plaintiff,

v.                                             Case No. 3:18-cv-01490

WESTERN REGIONAL JAIL and
CORRECTIONAL FACILITY;
PRIMECARE MEDICAL;
and DR. ANGELA NICHOLSON,

       Defendants.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On December 4, 2018, Plaintiff Jefferson O. Smith, Sr., ("Smith"), proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1). On December 6, 2018, the undersigned ordered Smith to amend his complaint to cure certain deficiencies. (ECF No. 3). Smith submitted an amended complaint on December 18, 2018, which was docketed as a new civil action and given Case No. 3:18-cv-01525. Accordingly, on December 19, 2019, the undersigned consolidated the cases, with Case No. 3:18-cv-01490 designated as the lead case. (ECF No. 4).

Currently pending before the Court is the Motion of the Western Regional Jail and Correctional Facility ("WRJ") to dismiss the case against it for failure to state a claim. (ECF No. 8). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings

1

of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** the Motion to Dismiss, (ECF No. 8); **DISMISS** the Western Regional Jail and Correctional Facility, with prejudice; **REMOVE** the Western Regional Jail and Correctional Facility from the style of this case; **TERMINATE** and **REMOVE** Case No. 3:18-cv-1525 from the docket of the Court, as it is duplicative of the instant action; and allow Plaintiff to proceed, at least at this juncture, with his claims against the remaining defendants, who have not yet made an appearance in the case.

I. **Smith's Allegations**

In his first complaint, (ECF No. 1), and his amendment to that complaint, (ECF No. 23), Smith claimed that the conditions at the WRJ were unconstitutional. In particular, he stated that the WRJ (1) failed to timely provide him with sheets and a change of clothing, (2) failed to provide him with cleaning supplies; (3) was so dirty that he developed a sty on his eye, sores on his leg and arms, and other inmates contracted staphylococcus infections, and (4) denied him needed medical care for kidney stones. Smith did not request any particular relief, stating instead that he wanted to "talk with a lawyer" before making such a request. (ECF No. 23 at 5).

In an Amended Complaint filed on August 28, 2019, Smith expounded on his claims related to the lack of medical care. (ECF No. 19). According to Smith, he was admitted to the WRJ on August 24, 2018. He informed the medical staff that he had severe kidney stones and was seeing Dr. Jensen at Cabell Huntington Hospital. On August 29, 2019, Dr. Angela Nicholson, a physician at the WRJ, ordered an ultrasound on Smith and, two months later, sent him to Marshall Urology. The physician at Marshall Urology ordered a CT scan and told Smith he needed to return to Dr. Jensen.

Apparently, on January 9, 2019, Dr. Nicholson sent Smith to St. Mary's Medical Center for the CT scan. After the test was completed, Smith was returned to the WRJ. However, St. Mary's Medical Center later notified the WRJ to bring Smith back to the hospital, because his kidneys were badly infected. The Emergency Room at St. Mary's Medical Center then referred Smith to Dr. Jensen. Smith alleges that Dr. Jensen scheduled an appointment for Smith on January 29, 2019, but on January 18, 2019, Smith was transferred to another correctional facility. Smith claims that if Dr. Nicholson and PrimeCare Medical would have sent him to Dr. Jensen at the outset, he would not have experienced the pain and complications associated with his severe kidney stones. (ECF No. 19).

## II. Motion to Dismiss of the WRJ

The WRJ has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The WRJ argues that the allegations contained in the complaint and its amendment are insufficient to state a claim for relief. In the WRJ's view, Plaintiff has merely listed a series of grievances related to his living situation, most of which have been resolved. Moreover, Plaintiff makes no specific request for monetary or equitable relief. The WRJ argues that, consequently, Plaintiff fails to assert a plausible cause of action, and the complaint should be dismissed against the WRJ.

## III. Standard of Review

Rule 12(b)(6) permits the district court to dismiss a defendant from a civil action when the complaint fails to state a claim against that defendant upon which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on

3

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court of the United States ("Supreme Court") explained the "plausibility" standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While the court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of "a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S at 555). Nonetheless, a Rule 12(b)(6) motion should be granted only "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Courts are required to liberally construe *pro se* complaints, like the one filed in this action. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid cause of action. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading "to include claims that were never presented," *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998),

4

construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV.   Discussion

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to state a viable claim under § 1983, a plaintiff must show that: (1) a ***person*** deprived him or her of a federally protected civil right, privilege, or immunity and (2) that the ***person*** did so under color of State law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999) (emphasis added).

The WRJ argues that the complaint fails to state a plausible claim against it, because Smith asserts no constitutional basis for liability, no specific injury, and no explicit claim for relief. While all of this may be true, the undersigned **FINDS** that the WRJ is entitled to dismissal for two more fundamental reasons. First, the WRJ is an arm of the State of West Virginia entitled to sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution and, second, the WRJ is not a person subject to suit under 42 U.S.C § 1983.

### *A. The WRJ is Entitled to Sovereign Immunity in this Court*

Although not specifically raised by the WRJ, the undersigned **FINDS** that the WRJ is entitled to immunity under the Eleventh Amendment to the United States

5

Constitution.[1] The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Therefore, as a preliminary matter, the undersigned must determine whether the WRJ is an agency, official, or other arm of the State of West Virginia entitled to Eleventh Amendment immunity. The answer is clear, as the law is well settled that state correctional facilities, such as the WRJ, are arms of the State of West Virginia. *See Hall*

---

[1] The Court may *sua sponte* raise the issue of sovereign immunity. *See Regueno v. Erwin*, No. 2:13-CV-00815, 2013 WL 1837881, at *2 (S.D.W. Va. May 1, 2013) (holding that "[a]lthough [the Jail] did not raise an Eleventh Amendment immunity defense in its motion, 'because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*.'") (quoting *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997)).

*v. Pszczolkowski,* No. 5:14CV150, 2015 WL 6742107, at *3 (N.D.W. Va. Nov. 4, 2015) (holding that "state detention facilities are 'arms of the state'") (citing *Preval v. Reno*, 203 F.3d 821 (Table), No. 99-6950, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished per curiam)); *see, also, Kinder v. PrimeCare Med., Inc.,* No. 3:13–31596, 2015 WL 1276748, at *2 (S.D.W. Va. Mar. 19, 2015) (dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail,* No. 3:13–3293, 2014 WL 66645, at *1, *4 (S.D.W. Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting the finding that the WRJ is arm of the State for Eleventh Amendment purposes). Accordingly, the undersigned **FINDS** that the WRJ is entitled to sovereign immunity from suit under the Eleventh Amendment.

Having determined that the WRJ is entitled to sovereign immunity, the undersigned must consider whether dismissal of the WRJ is precluded by an exception to immunity. Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing,* No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the

State of West Virginia has not waived its sovereign immunity in this type of suit, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Consequently, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will v. Mich. Dept. of State Police*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. 58, 65 (1989). Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government … unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment

8

sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id*. Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the WRJ is not a state officer, but rather a state entity or agency, the third exception to Eleventh Amendment immunity is likewise inapplicable. *Lee-Thomas v. Prince George's Cty. Public Schools*, 666 F.3d 244, 249 (4th Cir. 2012) (recognizing that lawsuit must name state official as defendant, not state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309

9

F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction").

In sum, since none of the exceptions apply, the undersigned **FINDS** that the WRJ is shielded by the Eleventh Amendment's sovereign immunity from Smith's § 1983 claim and should be dismissed on that ground.

### B  *The WRJ is not a Person Under § 1983*

In *Will,* the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of … § 1983." 491 U.S. at 60. Examining the language and purpose of the statue, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would be barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State, itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

As previously stated, the WRJ is an arm of the State of West Virginia. Accordingly, the undersigned **FINDS** that the WRJ is not a "person" subject to suit under § 1983. *See Roach v. Burch,* 825 F. Supp. 116 (N.D.W. Va. 1993); *also, Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989); *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F.Supp.2d 803 (S.D.W. Va. 2010) (finding that the West Virginia Regional Jail

10

Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.); *Lewis v. Western Reg'l Jail,* No. 3:11–cv–01016, 2012 WL 3670393, at *5 (S.D.W. Va. July 24, 2012) (recognizing that "the WRJ is not a person subject to suit under § 1983"), *report and recommendation adopted by* 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012); *and Dement v. Summers Cnty. Courthouse,* No. 5:13–cv–08899, 2015 WL 461560, at *3 (S.D.W. Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit). As such, Smith's complaint against the WRJ should be summarily dismissed on this ground as well.

## V.     Proposal and Recommendations

For the reasons set forth above, the undersigned **PROPOSES** that the presiding District Judge accept and adopt the findings herein and respectfully **RECOMMENDS** that the Motion to Dismiss, (ECF No. 8), be **GRANTED**; the Western Regional Jail and Correctional Facility be **DISMISSED**, with prejudice, from this civil action; the Western Regional Jail and Correctional Facility be **REMOVED** from the style of this case; Case No. 3:18-cv-1525 be **TERMINATED** and **REMOVED** from the docket of the Court, as it is duplicative of the instant action; and Plaintiff be permitted to proceed, at least at this juncture, with his claims against the remaining defendants, who have not yet made an appearance in the case.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within

which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:** September 3, 2019

_____
Cheryl A. Eifert
United States Magistrate Judge