IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| **JEFFERSON O. SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. 3:18-01490 |
| v. | ) |
| | ) |
| **PRIMECARE MEDICAL,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss Complaint and Alternative Motion for Summary Judgment (Document No. 29), filed on October 4, 2019. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 33.) Plaintiff filed his Response in Opposition on November 7, 2019. (Document No. 34.) Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' above Motion should be granted.

## FACTUAL BACKGROUND

On December 24, 2018, Plaintiff, acting *pro se*, filed a Complaint seeking relief for alleged violations of his constitutional and civil rights pursuant to 42 U.S.C. § 1983.[1] (Civil Action No. 3:18-1490, Document No. 1.) Specifically, Plaintiff complained that he had been incarcerated at the Western Regional Jail since August 24, 2018, and it took two months for him to get sheets and

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

a change of clothes. (Id.) Plaintiff complains that inmates have to wash their clothes by hand. (Id.) Plaintiff further states that several inmates have a "staph infection from it being so dirty" and he has developed a sty on his eye. (Id.) Finally, Plaintiff states that he has a problem with kidney stones. (Id.) Plaintiff acknowledges that medical staff has conducted x-rays and ultrasounds. (Id.) Plaintiff, however, complains that "the doctor put in for me to see my doctor "on the street" but I guess it wasn't approved." (Id.)

By Order entered on December 6, 2018, United States Magistrate Judge Cheryl A. Eifert directed Plaintiff to (1) either pay the $400 administrative and filing fee or file an Application to Proceed *in forma pauperis*, and (2) amend his Complaint to cure the noted deficiencies. (Id. Document No. 3.) On December 18, 2018, Plaintiff filed his Application to Proceed *in forma pauperis* and Complaint initiating Civil Action No. 3:18-1525. (Civil Action No. 3:18-1525, Document Nos. 1 and 2.) In his Complaint, Plaintiff names the Western Regional Jail as the sole defendant. (Id., Document No. 2.) Plaintiff asserts that same claims as asserted in his Complaint filed in the above action. (Id.) Additionally, Plaintiff complains that the "showers are very nasty; they have mold in them." (Id.) Plaintiff further alleges that the has "a few infected sores on my legs and arms." (Id.) Plaintiff did not request any particular relief, but stated that he needed to "talk with a lawyer" before making such a request. (Id.) By Order entered on December 19, 2018, Judge Eifert consolidated Case Action No. 3:18-1525 with the above action, granted Plaintiff's Application to Proceed *in forma pauperis,* and directed the Clerk to issue process for the named defendant (Western Regional Jail). (Civil Action No. 3:18-1490, Document No. 4.) Additionally, Judge Eifert notified Plaintiff that he still needed to make the necessary amendments to his Complaint. (Id.) Specifically, Plaintiff's Complaint did not identify any person as a defendant, nor did it explain how that person or persons acted with deliberate indifference. (Id.) On the same day,

the Clerk issued process for the Western Regional Jail ("WRJ"). (Id., Document No. 5.)

On May 9, 2019, the WRJ filed its Motion to Dismiss and Memorandum in Support. (Id., Document Nos. 8 and 9.) In its Motion, the WRJ argues that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted. (Id.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 13, 2019, advising him of the right to file a response to WRJ's Motion. (Id., Document No. 10.) On May 28, 2019, Plaintiff filed his Response in Opposition. (Id., Document No. 14.) WRJ filed its Reply on May 30, 2019. (Id., Document No. 15.)

By Order entered on August 14, 2019, Judge Eifert granted Plaintiff an extension of time to file an Amended Complaint. (Id., Document No. 18.) On August 28, 2019, Plaintiff filed his Amended Complaint naming the following as Defendants: (1) PrimeCare Medical; and (2) Dr. Angela Nicolson. (Id., Document No. 19.) Plaintiff appears to allege that Defendants PrimeCare and Nicolson acted with deliberate indifference and negligence concerning his need for medical treatment concerning his kidney stones. (Id.) Specifically, Plaintiff states as follows:

> I went to the Western Regional Jail on 8-24-18. I informed the medical staff that I had very bad kidney stones and I was seeing Dr. Jensen at the Cabell Huntington Hospital. Dr. Angela Nicolson ordered an ultrasound 8-29-18 and 10-31-18. Then Dr. Nicholson sent me to Marshall Urology for a follow-up. At that time, the doctor that I saw told me that he couldn't help me. He then referred me to Dr. Jensen and he also ordered a CT scan. I was sent to St. Mary's Hospital for the CT scan on 1-9-19. After the CT scan, I was sent back to the jail. The hospital called the jail and had them bring me back to the hospital. When I got to the hospital, I was informed that I had a bad infection due to the kidney stone blockage. The stones in the right kidney are 8 mm x 5 mm in size. Also, additional stones measuring up to 4 mm in size. The left kidney has a staghorn stone measuring 2.9 cm by 1.8 cm. Also, multiple additional stones measuring up to 6mm in size. The ER doctor at St. Mary's Hospital referred me to Dr. Jensen at Cabell Huntington Hospital. I feel Dr. Nicolson of PrimeCare could've helped me if they would've sent me to Dr. Jensen from the start, but they didn't. I feel they refused me proper medical help. When I was finally set an appointment with Dr. Jensen for 1-29-19, I was shipped out of the jail on 1-18-19.

(Id.) By Order entered on August 29, 2019, Judge Eifert directed the Clerk to issue a summons for the newly added defendants. (Id., Document No. 20.) Judge Eifert further directed the WRJ was not required to answer the Amended Complaint in view of its pending Motion to Dismiss and the lack of any new allegations against it. (Id.) By Proposed Findings and Recommendations entered on September 3, 2019, Judge Eifert recommended that the District Judge grant the WRJ's Motion to Dismiss. (Id., Document No. 24.)

On September 10, 2019, the WRJ filed its Motion to Dismiss Plaintiff's Amended Complaint and Memorandum in Support. (Id., Document Nos. 25 and 26.) By Proposed Findings and Recommendations entered on September 11, 2019, Judge Eifert recommended that the District Judge grant the WRJ's second Motion to Dismiss based on the reasons previously stated in her first Proposed Findings and Recommendations. (Id., Document No. 27.) By Memorandum Opinion and Order entered on October 1, 2019, United States District Judge Robert C. Chambers adopted Judge Eifert's recommendations and dismissed Plaintiff's Complaint and Amended Complaint as to WJR. (Id., Document No. 28.)

On October 4, 2019, Defendants PrimeCare and Nicholson filed their Motion to Dismiss and Alternative Motion for Summary Judgment and Memorandum in Support. (Id., Document Nos. 29 and 30.) In their Motion, Defendants argue that Plaintiff's claims against them should be dismissed based on the following: (1) "Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted" (Id., Document No. 30, pp. 4 - 5.); (2) "Plaintiff has failed to comply with the Notice of Claim and Screening Certificate of Merit requirements of the MPLA" (Id., pp. 5 – 8.); (3) "Plaintiff's Complaint should be dismissed because PrimeCare is not a 'person' subject to suit under 42 U.S.C. § 1983" (Id., p. 8.); and (4) "Plaintiff's claims do not meet the legal threshold for a viable Eighth Amendment claim" (Id., pp. 9 – 11.) As Exhibits,

4

Defendants attach a copy of Plaintiff's pertinent medical records. (Id., Document Nos. 29-1, 29-2, 29-3, 29-4, 29-5, 29-6, 29-7, 29-8, 29-9, 29-10.) By Order entered on October 7, 2019, the above matter was transferred to the undersigned for total pretrial management and submission of proposed findings of facts and recommendation for disposition. (Id., Document No. 32.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on October 8, 2019, advising him of the right to file a response to Defendants' Motion. (Document No. 33.) On November 7, 2019, Plaintiff filed his Response in Opposition. (Document No. 34.) In his Response, Plaintiff merely states that he is sending copies of his medical records in support of his claims. (Id., p. 1.) As an Exhibit, Plaintiff attaches a copy of his penitent medical records. (Id., pp. 2 – 59.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to

dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aid Society, Inc., 807 F.3d 619 (4th Cir. 2015).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of

law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

Construing Plaintiff's Complaint and Amended Complaint liberally, the undersigned finds that Plaintiff is asserting an Eighth Amendment claim of deliberate indifference to his medical needs and a state law claim of medical malpractice. Plaintiff names PrimeCare Medical and Dr. Nicholson (an employee of PrimeCare) as the Defendants.

**1.      Eighth Amendment:**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447

(1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'")(quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental

8

injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Id.; also see Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 *1st Cir. 1990)("A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."); Morales Felicciano v. Calderson Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004)("A constitutional violation is . . . established when government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medication attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort, or a threat to good health.") The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

Miltier v. Born, 896 F.2d 848, 851 - 52 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970); See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-

threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

PrimeCare is a contracted medical provider of the West Virginia Regional Jail and Correctional Facility Authority, which provides health care services to inmates in West Virginia's regional jails. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1998)(A private entity that contracts with the State to provide medical services acts "under color of state law."); also see

Monell v. Dep't of Soc. Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(A corporation acting under color of State law can be held liable under Section 1983 only for unconstitutional policies and practices.); Motto v. Correctional Medical Services, 2007 WL 2897854 (S.D.W.Va. Sept. 27, 2007). Since PrimeCare is a contracted medical provider for a state agency, the deliberate indifference standard is applicable to the conduct of PrimeCare and its employees. Mullins v. Prime Care Medical, Inc., 2014 WL 1260378, * 9 (S.D.W.Va. March 27, 2014)(J. Johnston); also see Edwards v. State, 2002 WL 34364404, * 12 (S.D.W.Va. March 29, 2002)(J. Goodwin)("To state a case against PrimeCare, [plaintiff] must show that a policy or custom or ratification of a policy or custom and procedure by PrimeCare caused a constitutional violation."); Kinder v. PrimeCare Medical, Inc., 2015 WL 1276748, *9 (S.D.W.Va. March 19, 2015). "[A] private corporation is liable under § 1983 *only* when the official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999)(emphasis in original). A private corporation, however, cannot be held liable under the doctrine of *respondeat superior* for the individual actions of its employees. Id. at 727; see also Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006). To succeed, Plaintiff must show that the official charged acted personally in the deprivation of plaintiff's rights.

Liberally construing Plaintiff's Complaint and Amended Complaint, Plaintiff alleges that PrimeCare and Defendant Nicholson acted with deliberate indifference in providing treatment for his kidney stones. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, a condition for which lack of treatment causes continuous severe pain or significantly affects an individual's daily life activities, or a condition diagnosed as mandating treatment or obviously requiring medical attention. Plaintiff alleges that his condition caused continuous pain and suffering. Accordingly,

the undersigned will assume for purposes of this motion that Plaintiff's condition was serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether PrimeCare and Defendant Nicholson acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that PrimeCare and Defendant Nicholson acted with deliberate indifference in failing to provide appropriate and timely treatment for his kidney stones. The undisputed evidence reveals that during Plaintiff's intake screening on August 24, 2018, Plaintiff reported his history of "bad kidneys." (Document No. 29-1.) Five days later on August 29, 2018, PrimeCare Physician Alfred Baldera made a telephone order for an ultrasound to be conducted of Plaintiff's left kidney due to "kidney stones" and instructed that Plaintiff be placed in the "current chronic care clinic treatment for ongoing kidney issues." (Document No. 29-2.) The ultrasound was conducted the same day (August 29, 2018) revealing the following: "Mild to moderate right hydronephrosis [swollen kidney] with small stones present. There is moderate left hydronephrosis and small stones and possible 1.9 cm cyst. Correlation with CT scan may be helpful to further evaluate." (Document No. 29-3 and Document No. 34, p. 15.) On September 3, 2018, Plaintiff was evaluated by PrimeCare Physician Jeremy Fuller for "chronic left sided pain from stones." (Document No. 29-4, pp. 2 - 3.) It was noted that Plaintiff had no blood in his urine. (Id.) Dr. Fuller noted that Plaintiff's medical records from Dr. Jensen and Dr. Wyner (Plaintiff's "outside" physicians) were to be requested and obtained. (Id.) Dr. Fuller prescribed Motrin for pain. (Id.) Approximately one week later, on September 10, 2018, Plaintiff was seen by Dr. Baldera to review the results of his ultrasound. (Id., p. 2.) Dr. Baldera reviewed the ultrasounds results with Plaintiff and advised them there were no

obstructing renal stones. (Id.) Dr. Baldera changed Plaintiff's pain medication to an anti-inflammatory medication. (Id.)

On October 17, 2018, an abdominal x-ray was conducted revealing a "left-sided kidney stone." (Document No. 34, p. 14.) On October 24, 2018, Plaintiff evaluated by Dr. Baldera for skin cancer on his face (basal cell carcinoma) and kidney stones. (Id.) Dr. Baldera ordered a dermatology referral for the removal of the skin cancer and another ultrasound of Plaintiff's kidneys to determine if a urology consult was necessary. (Id.) The ultrasound was performed six days later, on October 30, 2018. (Document No. 29-5 and Document No. 34, pp. 2 and 11.) The ultrasound revealed "moderate hydronephrosis, mildly increased." (Id.) Based on the ultrasound results, medical staff submitted a consult request on November 7, 2018, for referral of Plaintiff to an "outside" urologist. (Document No. 29-6.) The consult request was approved on December 6, 2018. (Id.) On the same day, medical staff contacted Marshall Urology and obtained Plaintiff an appointment scheduled for December 18, 2018. (Id.) On December 11, 2018, Plaintiff was evaluated at his chronic care visit by Defendant Nicholson. (Document No. 29-4.) Defendant Nicholson noted that Plaintiff had a history of kidney disease and was awaiting a urology appointment. (Id.) Defendant Nicholson also conducted labs. (Id.) On December 18, 2018, Plaintiff was evaluated at Marshall Urology and a CT scan of his pelvis was ordered. (Document No. 29-7 and Document No. 34, p. 10.) The CT scan was conducted at St. Mary's Medical Center on January 9, 2019. (Document No. 29-8 and Document No. 34, pp. 4 and 6.) The CT scan revealed "an 8 mm obstructing proximal right ureteral calculus versus 2 adjacent smaller obstructing calculi; a staghorn calculus within the left renal pelvis resulting in obstructive uropathy; and additional non-obstructing renal calculi present bilaterally." (Id.) The radiologist recommended a urology consult. (Id.) Since this was considered to be a critical finding, Defendant Nicholson was notified of the

13

results at 1:42 p.m. on January 9, 2019. (Id.) At 2.29 p.m. on the same day, the shift commander at WRJ was advised of the urgent need to transport Plaintiff to the ER and Plaintiff was returned to St. Mary's Medical Center. (Document No. 29-9.) At the ER, Plaintiff was evaluated by Dr. Muhammad Khan and diagnosed with hematuria and rental lithiasis. (Document No. 29-10 and Document No. 34, pp. 3, 7 - 9.) While in the ER, Plaintiff was given pain and nausea medication and IV fluids. (Document No. 34, pp. 7 - 9.) Upon discharge, Dr. Khan prescribed Ciprofloxacin HCL (antibiotic) and scheduled Plaintiff an appointment with Dr. Jensen for January 29, 2019. (Document No. 29-10 and Document No. 34, pp. 3, 7 – 9.) During the early morning hours of January 10, 2019, Plaintiff was release from the hospital and returned to WRJ. (Document No. 29-9.) On January 14, 2019, Plaintiff was evaluated by Dr. Fuller. (Document No. 29-4.) Dr. Fuller noted that Plaintiff's pain was controlled and he had no acute complaints. (Id.) Plaintiff was transferred from the WRJ prior to his January 29, 2019 appointment with Dr. Jensen.

First, the undersigned finds that the record is void of any allegation or indication that PrimeCare had a policy or custom of failing to provide medical care despite knowing that treatment was necessary. Next, the Court finds that Defendant Nicholson and PrimeCare staff did not act with deliberate indifference in providing medical treatment regarding Plaintiff's kidney condition. The undisputed evidence reveals that medical staff consistently evaluated Plaintiff and provided treatment. Medical staff consistently evaluated Plaintiff's condition, ordered an x-ray, ultrasounds and CT scans, conducted lab work, requested medical records from his prior urologists, prescribed medications, referred Plaintiff to specialists, and immediately transported Plaintiff to the ER for treatment when notified of critical CT scan results. Although Plaintiff complains that he was not initially referred to Dr. Jensen (Plaintiff's urologist prior to incarceration) for treatment, the record clearly establishes that he was referred to a urologist at Marshall Urology for evaluation in a timely

14

manner. Upon receiving Plaintiff's ultrasound results revealing a mild increase in the swelling of his kidneys, medical staff submitted a consult result for Plaintiff's referral to an "outside" urologist. The consult result was approved approximately one month later, and medical staff immediately obtained Plaintiff an appointment at Marshall Urology that occurred less than two weeks later. Marshall Urology ordered a CT scan, which ultimately revealed obstructing kidney stones. Plaintiff was immediately taken to the ER where the physician prescribed medications and scheduled Plaintiff a follow-up appointment with Dr. Jensen for further treatment. The undersigned, therefore, finds no evidence that Defendant Nicholson and PrimeCare staff knowingly disregarded Plaintiff's need for treatment. Plaintiff appears to simply disagree with the appropriate course of treatment. Specifically, Plaintiff believes he should have been initially referred to Dr. Jensen instead of Marshall Urology. An inmate's disagreement with his medical care or the course of treatment is insufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Based upon the undisputed facts, the undersigned finds that Defendant Nicholson and PrimeCare staff did not act with deliberate indifference in providing medical treatment for Plaintiff's condition. Thus, the undersigned respectfully recommends that Defendants' Motion (Document No. 29) be granted as to Plaintiff's Eighth Amendment claim. The undersigned finds

it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's Section 1983 claim.

2. **Medical Negligence:**

Finally, Defendants argue that to the extent Plaintiff is asserting a medical malpractice claim, such a claim should be dismissed because Plaintiff failed to comply with the prerequisites of the MPLA. (Document No. 29 and Document No. 30, pp. 5 – 8.) Plaintiff failed address the above argument in his Response. (Document No. 34.)

Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6. If a plaintiff has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the plaintiff must comply with the provisions of W. Va. Code § 55-7B-6(b) "except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim." W. Va. Code 55-7B-6(d). Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach

of the applicable standard of care." W. Va. Code § 55-7B-6(c). If a plaintiff proceeds under this subsection, the Plaintiff must "file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit. Id.

As stated above, Plaintiff's Response does not dispute that he failed to comply with the prerequisites of the MPLA. (See Document No. 34.) Additionally, the record contains no indication or allegation that Plaintiff has complied with the prerequisites of the MPLA. Plaintiff further does not claim that he has filed a statement in lieu of a screening certificate of merit because his cause of action is based upon a well-established legal theory of liability. The undersigned, therefore, recommends that the Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment (Document No. 29.) be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss Complaint and Alternative Motion for Summary Judgment (Document No. 29), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and counsel of record.

Date: May 19, 2020.

Omar J. Aboulhosn
United States Magistrate Judge